# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

KENNETH G. STOUDT, Individually and on
behalf of all others similarly situated,

              Plaintiff,

    v.

STERLING FINANCIAL CORPORATION,
a Pennsylvania Corporation; EQUIPMENT
FINANCE, LLC, a Pennsylvania Limited
Liability Company; J. ROGER MOYER, JR.;
THOMAS DAUTRICH; GEORGE W.
GRANER; J. BRADLEY SCOVILL; and
TITO L. LIMA,

              Defendants.

_____

:  
:  
:  
:   Civil Action No. _____
:  
:  
:  
:  
:   JURY TRIAL DEMANDED
:  
:  
:  
:  
:  
:  
:  
:  
:  

## COMPLAINT

Plaintiff, Kenneth G. Stoudt, individually and on behalf of all others similarly situated, alleges, by and through his attorneys, as follows upon personal knowledge, upon information and belief, and based upon the investigation undertaken by Plaintiff's counsel, which included, inter alia, review and analysis of Defendants' websites, press releases, news articles, materials filed with the Securities and Exchange Commission (the "SEC"), and other public records.

1.    This is a class action brought on behalf of all purchasers of common stock of Defendant Sterling Financial Corporation ("Sterling") between April 27, 2004 and May 24, 2007, inclusive, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Sterling Financial Corporation ("Sterling") is a diversified financial services company based in Lancaster, Pennsylvania.  Sterling and its affiliated entities provide a variety of banking services in south-central Pennsylvania, northern Maryland, and northern Delaware.  Sterling and its affiliates also offer correspondent banking services in the mid-Atlantic region to other companies within the financial services industry, and banking related insurance services. Sterling Financial Services Group affiliates provide specialty commercial financing, fleet and equipment leasing, and investment, trust and brokerage services. Sterling's common stock is publicly traded on NASDAQ under the symbol "SLFI."

3.    Defendant Equipment Finance, LLC ("EFI") is a wholly-owned subsidiary of Sterling's affiliate bank, Bank of Lancaster, N.A.

4.    EFI and certain of its officers and agents employed devices, schemes and artifices to defraud shareholders, including Plaintiff and the class members, by knowingly and/or recklessly providing materially false and misleading information related to EFI to persons responsible for the financial reporting for Sterling, for the purpose of artificially inflating Sterling's stock price.  Specifically, Defendants and certain of their officers, employees and agents perpetrated (or were complacent in

the perpetration of) a sophisticated loan scheme that included concealing credit delinquencies, falsifying financial contracts and related documents, and subverting the company's internal control and reporting systems. In addition to participating in this scheme, Defendants knowingly or recklessly caused Sterling to issue materially false and misleading financial statements related to the financial condition of the company during the Class Period.

5.     During the class period, Sterling's stock traded as high as $30.39 per share. By the time that the full extent of the fraud at Sterling had been revealed, the company's stock was trading at nearly one-third of that value. This action is brought to remedy losses suffered by shareholders as a result of the Defendants' material misrepresentations and omissions.

## JURISDICTION AND VENUE

6.     This action arises under sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1367, and §27 of the Exchange Act (15 U.S.C. § 78aa).

8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) and (c). Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District, and Defendants Sterling and EFI maintain their principal executive offices at 101

North Pointe Boulevard in Lancaster, Pennsylvania, which is located within this judicial district.

9.    In connection with the acts and omissions alleged in this Complaint, Defendants, directly or indirectly, used the instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

THE PARTIES

Plaintiff

10.    Plaintiff Kenneth G. Stoudt is an adult individual residing in Lancaster County, Pennsylvania.

11.    Plaintiff purchased stock of Defendants Sterling Financial Corporation during the class period and was damaged as a result.

Defendants

12.    Defendant Sterling Financial Corporation ("Sterling") is a Pennsylvania Corporation that can be served at 101 North Pointe Boulevard, Lancaster, PA 17601-4133. Sterling employs approximately 1,100 people, and has $2.63 billion in deposits at sixty-one (61) bank branches in central Pennsylvania, northern Maryland, and northern Delaware. According to the Form 10-K filed by Sterling with the SEC for the fiscal year ended December 31, 2006, there were 700 million shares of SLFI common stock authorized at December 31, 2006, and approximately 29.7 million shares outstanding. As of May 25, 2007, Sterling's market capitalization was approximately $296.39 million.

13.    Defendant EFI is a Pennsylvania limited liability company that can be served at 118 West Airport Road, Lititz, PA 17543.  EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States.  Sterling bought EFI in March of 2002 for $31.5 million.  For the fiscal years 2006, 2005, and 2004, EFI accounted for 41%, 38%, and 36%, respectively, of Sterling's net operating income.

14.    Defendant J. Roger Moyer, Jr. ("Moyer") served on Sterling's Board of Managers and/or Directors during the class period.  Moyer also served as a Director and Senior Vice President of the Bank of Lancaster County during the class period.

15.    Defendant Thomas Dautrich ("Dautrich") served on the Board of Managers and/or Directors for EFI, and also served as Senior Executive Vice President and Chief Banking Officer of Sterling during the class period.

16.    Defendant George W. Graner ("Graner"), prior to his announced departure from EFI on or around April 30, 2007, served as President, CEO, and manager of EFI during the class period.

17.    Defendant J. Bradley Scovill ("Scovill") served as Sterling's Chief Revenue Officer, CFO, Senior Executive Vice President, and Treasurer during the class period until May 23, 2005.

18.    Defendant Tito L. Lima ("Lima") replaced Defendant Scovill as Sterling's Chief Revenue Officer, CFO, Senior Executive Vice President, and Treasurer on May 23, 2005.

5

19.     Defendants EFI, Moyer, Graner, Dautrich, Scovill, and Lima are referred to as the "Controlling Defendants." Because of the Controlling Defendants' positions with Sterling and EFI, they had access to the adverse undisclosed material information about EFI's business, operations, subsidiaries, via access to internal corporate documents, conversations, and connections with other corporate officers and employees and attorneys, attendance at management and Board of Director meetings and committees thereof and via reports and other information provided to them in connection therewith.

20.     Each of the individual Controlling Defendants, by virtue of their high level positions at EFI and/or Sterling, directly participated in the management of EFI and/or Sterling, was directly involved in the day-to-day operations of EFI and/or Sterling at the highest levels, and was privy to confidential and propriety information concerning EFI and/or Sterling. The individual Controlling Defendants were involved in the drafting, producing, reviewing, and/or the dissemination of the materially false and misleading statements alleged to have been provided to persons involved in the financial reporting for Sterling that caused Sterling to issue materially false and misleading financial statements to the public.

21.     The acts charged in this Complaint were done by Defendants, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

22.     Except where specified otherwise, Defendants Sterling, EFI, Moyer, Scovill, Graner, Dautrich and Lima shall be collectively referred to herein as "Defendants."

23.     At all times herein mentioned, Defendants were the principals, agents, employees, servants, joint venturers, partners, and representatives of each other. In performing the acts complained of herein, Defendants each acted within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and acted with the permission and consent of the other Defendants.

## OPERATIVE FACTS

24.     In March of 2002, Sterling acquired EFI for $31.5 million.

25.     Prior to May 18, 2004, Plaintiff was one of two shareholders of Corporate Healthcare Strategies, Inc. ("CHS"), a Pennsylvania corporation.

26.     On January 12, 2004, Plaintiff, CHS, and David Stoudt, the other shareholder of CHS, entered into an Agreement and Plan of Reorganization with Sterling and its subsidiary, SFC Insurance Acquisition, LLC, under which Sterling was to acquire CHS for combined cash and stock consideration. The agreement, however, was not finalized at that time.

27.     On April 27, 2004, Sterling issued a materially false and misleading press release in which it described its results for the First Quarter ended March 31, 2004:

> LANCASTER, Pa., April 27 /PRNewswire-FirstCall/ --
> Sterling Financial Corporation (Nasdaq: SLFI announced

7

earnings for the quarter ending March 31, 2004

Results of Operations

Sterling's net income was $7.629 million for the quarter ended March 31, 2004, an increase of $1.004 million, or 15.2% from the first quarter 2003. Diluted earnings per share totaled $0.35 for the first quarter 2004 versus $0.31 for the same period 2003. Return on average realized equity for the first quarter of 2004 was 14.78%, compared to 14.52% in the first quarter of 2003.

\*\*\*\*\*

"Coming off an outstanding year in 2003, it is encouraging to begin 2004 with such rock-solid performance," said J. Roger Moyer, President and Chief Executive Officer of Sterling Financial Corporation. "Market conditions in the first quarter provided challenges, but Sterling continued our trend of improving on virtually every aspect of our business. The sustained performance of Sterling reflects the dedication and commitment of our people, who focus intently on meeting the needs of our customers and our shareholders."

28. On May 10, 2004, Sterling filed its Form 10-Q with the SEC, in which it repeated and reiterated the information contained in the company's April 27, 2004 press release.

29. On May 18, 2004, after further negotiations, Plaintiff, CHS, and David Stoudt entered into an Amended and Restated Stock Purchase Agreement (Exhibit 1) with Sterling and its subsidiary, SFC Insurance Acquisition, LLC, which agreement amended and restated the parties' earlier agreement of January 12, 2004.

30.    The amended agreement provided for combined cash and stock consideration based on CHS's net worth on the closing date, and additional cash and stock "earn outs" based on CHS's performance in the two years following the merger.  The value of the stock consideration was based on the market price of Sterling's shares.

31.    On May 27, 2004, pursuant to the amended agreement, Sterling issued 169,594 shares of its common stock to Plaintiff at a price of $25.34 per share.

32.    On July 27, 2004, Sterling issued a materially false and misleading press release announcing its "record earnings" for the second quarter of fiscal year 2004.  The press release stated in pertinent part:

> LANCASTER, Pa., July 27 /PRNewswire-FirstCall/ --
> Sterling Financial Corporation (Nasdaq: SLFI) announced
> record earnings for the quarter and six months ended
> June 30, 2004.
>
> Results of Operations
>
> Sterling's net income was $8.216 million for the quarter
> ended June 30, 2004, an increase of $1.272 million, or
> 18.3%, from the second quarter of 2003. Diluted earnings
> per share totaled $0.37 for the second quarter 2004 versus
> $0.33 for the same period in 2003, an increase of 12.1%.
> Return on average realized equity for the second quarter
> of 2004 was 15.40%, compared to 14.79% in 2003.
>
> Six Months Ended June 30, 2004
>
> Sterling's net income was $15.845 million for the six
> months ended June 30, 2004, an increase of $2.276
> million, or 16.8%, over the same period in 2003.  Diluted
> earnings per share totaled $0.72 for the six months ended
> June 30, 2004, versus $0.64 in 2003, an increase of 12.5%.
> Return on average realized equity for the first half of 2004
> was 15.10%, compared to 14.67% in 2003.

\*\*\*\*

Financial Position

J. Roger Moyer, Jr., President and Chief Executive Officer
of Sterling Financial Corporation, commenting on 2004's
results, stated, "We continue to be pleased with our
strategy of offering a diversified array of financial service
products to our customers that can be seen in our 2004
results. For the quarter ended June 30, 2004, noninterest
income increased 17.9% over 2003's results. The results
of our newest fee-based affiliates, including
StoudtAdvisors, Church Capital Management, and
Bainbridge Securities, have contributed greatly to our
revenue stream. Net interest income has also increased
12.0%, as our specialty and commercial lenders are
generating nice volume growth as well."

Moyer further added, "While we have been diversifying
our financial services product offerings, we have also been
focused on the expansion of our banking activities. Our
emerging markets, including Berks County,
Pennsylvania, Carroll County, Maryland, and New Castle
County, Delaware, also continue to reap the benefit of
market disruption, and have contributed to our asset
growth. We are very excited about our newest emerging
market, Pennsylvania's Capital Region, with our
announced agreement with The Pennsylvania State
Banking Company. 2004 has been very exciting for
Sterling's employees and shareholders, and we look
forward to continuing this momentum."

33. On August 9, 2004, Sterling filed its Form 10-Q with the SEC, in

which it repeated and reiterated the information contained in the company's July

27, 2004 press release.

34. On October 26, 2004, Sterling issued another press release, in which

it once again announced "record earnings" for the third quarter of the 2004 fiscal

year:

LANCASTER, Pa., Oct. 26 /PRNewswire-FirstCall/ --
Sterling Financial Corporation (Nasdaq: SLFI) announced
record earnings for the quarter and nine months ended
September 30, 2004.

Results of Operations

Quarter Ended September 30, 2004

Sterling's net income was $8.500 million for the quarter
ended September 30, 2004, an increase of $1.003 million,
or 13.4%, from the third quarter of 2003. Diluted
earnings per share totaled $0.38 for the third quarter
2004 versus $0.35 for the same period in 2003, an
increase of 8.6%. Return on average realized equity for
the third quarter of 2004 was 15.01%, compared to
15.40% in 2003.

****

Nine Months Ended September 30, 2004
Sterling's net income was $24.345 million for the nine
months ended September 30, 2004, an increase of $3.279
million, or 15.6%, over the same period in 2003. Diluted
earnings per share totaled $1.11 for the nine months
ended September 30, 2004, versus $0.99 in 2003, an
increase of 12.1%. Return on average realized equity for
the first nine months of 2004 was 15.07%, compared to
14.92% in 2003.

****

Financial Position

J. Roger Moyer, Jr., President and Chief Executive Officer
of Sterling Financial Corporation, reflecting on 2004's
results stated, "2004 has been an interesting year for
Sterling Financial Corporation, as it feels like two distinct
initiatives have been running simultaneously. The task of
documenting our compliance with Section 404 of
Sarbanes-Oxley has been felt throughout the
organization. On the plus side, it has resulted in renewed
evaluation of our internal control processes, and in some
cases, identified areas where efficiencies could be gained.

11

Concurrently, we have been able to grow our company through organic growth, as evidenced by strong loan volumes, and the results of our fee-based affiliates. Sterling's ability to handle these initiatives simultaneously is a tribute to our team of employees who enjoy the challenges of growing a company, while being respectful of the ever changing regulatory environment that exists today."

35.     On November 9, 2004, Sterling filed its Form 10-Q with the SEC, in which it repeated and reiterated the information contained in the company's October 26, 2004 press release.

36.     On January 25, 2005, Sterling issued another "record earnings" press release. This one reported the company's results for the fourth quarter of the 2004 fiscal year, and provided in pertinent part:

LANCASTER, Pa., Jan. 25 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) announced record earnings for the quarter and year ending Dec. 31, 2004.

J. Roger Moyer, president and chief executive officer of Sterling Financial Corporation, commenting on 2004's results, stated, "2004 has been an outstanding year for Sterling Financial Corporation, as we produced another year of record earnings. We continued to diversify our financial services product offerings while expanding our banking activities. The results of our newest fee-based affiliates, including StoudtAdvisors, Church Capital Management and Bainbridge Securities were significant contributors to our 16 percent increase in fee income. Net interest income also increased 13 percent, as our specialty and commercial lenders generated strong volume growth as well."

Moyer added, "Our team of over 1,000 employees should be complimented for their efforts in 2004. In addition to completing the acquisitions of StoudtAdvisors and Pennsylvania State Bank and entering into the New

Castle, Del., market, they were able to dedicate substantial resources on documenting our compliance with Section 404 of Sarbanes-Oxley. Despite these dynamic factors, we were able to improve on our positive earnings momentum. 2004 has been a rewarding year for Sterling's shareholders and employees, and we look forward to continued success in 2005."

****

Results of Operations

Quarter Ending Dec. 31, 2004

Sterling's net income was $8.984 million for the quarter ended Dec. 31, 2004, an increase of $991,000, or 12.4 percent from the fourth quarter of 2003. Diluted earnings per share totaled $0.40 for the fourth quarter 2004 versus $0.37 for the same period in 2003, an increase of 8.1 percent. Return on average realized equity for the fourth quarter of 2004 was 14.82 percent, compared to 15.59 percent in 2003.

****

Twelve Months Ended Dec. 31, 2004

Sterling's net income was $33.329 million for the year ended Dec. 31, 2004, an increase of $4.270 million, or 14.7 percent, over the same period in 2003. Diluted earnings per share totaled $1.51 for the year ended Dec. 31, 2004, versus $1.35 in 2003, an increase of 11.9 percent. Return on average realized equity for 2004 was 15.00 percent, compared to 15.10 percent in 2003.

37.     On March 30, 2005, Sterling filed a Form 10-K with the SEC, in which it repeated and reiterated the information contained in the company's January 25, 2005 press release.

13

38.     On April 25, 2005, Sterling issued a press release announcing that J. Bradley Scovill had been assigned to a newly created post of group executive of the company's financial services group.  The press release stated that "Scovill's current chief financial officer responsibilities will be assumed by Tito L. Lima, who is joining Sterling on May 23, 2005."  The press release further provided:

> "The creation of this new executive role is a direct result of our ability to successfully execute our corporate strategies.  Today, 44 percent of our net income is generated by our non-banking financial services affiliates," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation."  Our strategy for many years has been to grow Sterling through our core banking affiliates and broaden our menu of financial services through the addition of companies that complement each other.  From basic banking, we have expanded into specialty commercial financing; fleet and equipment leasing; investment, trust and brokerage services; insurance services; and human resources consulting.  Brad will be working with these entities to provide corporate level direction and leadership."
>
> Moyer said Scovill has played a pivotal role in Sterling's growth and has been involved firsthand in the acquisition of some of the companies that have joined Sterling. Moyer also welcomed Lima to Sterling as chief financial officer.

39.     On April 26, 2005, Sterling issued a materially false and misleading press release announcing "record earnings" for the first quarter of the 2005 fiscal year, as well as a stock split:

> LANCASTER, Pa., April 26 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) today reported record earnings for the quarter that ended on March 31, 2005, and declared a 5-for-4 stock split, to be effected in the form of a 25 percent stock dividend.
>
> "Sterling continues to benefit from the alignment of its

banking and financial services affiliates to offer a full menu of financial services options in established and growth markets," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "The progress that we are making is attributable to the energy and focus of Sterling's 1,100 employees. Their dedication to providing personal and professional financial services differentiates Sterling brands from others in the markets that we serve. Their commitment to delivering positive results for Sterling shareholders is evident as we are able to declare our second stock split in two years."

The board of directors announced the 5-for-4 stock split to be effected in the form of a 25 percent stock dividend to shareholders of record on May 13, 2005 and payable on June 1, 2005. The board believes the stock split rewards the shareholders for continued growth and profitability of the company, while allowing for a broader distribution of shares and the potential for a greater number of investors to own shares of Sterling.

In the following earnings discussion and financial information presentation, all per share information has been restated to reflect the 5-for-4 split, effected in the form of a 25 percent stock dividend.

Results of Operations

Sterling's net income was $9.279 million for the quarter ended March 31, 2005, an increase of $1.650 million, or 21.6 percent from the first quarter of 2004. Diluted earnings per share totaled $0.316 for the first quarter of 2005 versus $0.280 for the same period in 2004, an increase of 12.9 percent. Return on average realized equity for the first quarter of 2005 was 13.82 percent, compared to 14.78 percent in 2004.

40.     On May 10, 2005, Sterling filed a Form 10-Q with the SEC, in which it

repeated the information in the company's April 26, 2005 press release.

41.    On July 26, 2005, Sterling issued another materially false and

misleading press release announcing its results for the second quarter of the 2005

fiscal year.  The press release provided in relevant part:

> LANCASTER, Pa., July 26 /PRNewswire-FirstCall/ --
> Sterling Financial Corporation (Nasdaq: SLFI) reported
> record earnings for the quarter and six months ended
> June 30, 2005.
>
> "The second quarter 2005 is a continuation of the
> momentum that Sterling continues to experience," said J.
> Roger Moyer, Jr., president and chief executive officer of
> Sterling Financial Corporation. "Sterling's strength stems
> from our diverse business lines and revenue streams,
> serving high-growth markets, a strong capital position to
> fund growth, excellent credit quality, engaged employees
> and experienced leadership."
>
> ****
>
> Sterling's net income was $9.684 million for the quarter
> ended June 30, 2005, an increase of $1.468 million, or
> 17.9 percent from the second quarter of 2004.  Diluted
> earnings per share totaled $0.331 for the second quarter
> of 2005 versus $0.299 for the same period in 2004, an
> increase of 10.7 percent. Return on average realized
> equity for the second quarter of 2005 was 14.00 percent,
> compared to 15.40 percent in 2004.
>
> ****
>
> Sterling's net income was $18.963 million for the six
> months ended June 30, 2005, an increase of $3.118
> million, or 19.7 percent from the same period in 2004.
> Diluted earnings per share totaled $0.647 for the six
> months ended June 30, 2005 versus $0.580 for 2004, an
> increase of 11.6 percent.  Return on average realized
> equity for the first half of 2005 was 13.92 percent,
> compared to 15.10 percent in 2004.  The decrease in
> return on average realized equity, despite an increase in
> earnings, is due to an increase in stockholders' equity that
> resulted from the issuance of stock to acquire Corporate

> Healthcare Strategies and Pennsylvania State Bank in 2004.
>
> ****
>
> Sterling has continued its trend of improving net interest income, from $46.287 million for the six months ended June 30, 2004 to $55.885 million in 2005, a 20.7 percent increase.
>
> ****
>
> Moyer stated, "Despite the loan growth that Sterling has experienced during 2005, our asset quality ratios remain strong, demonstrating our focus on growing assets without sacrificing credit quality. Sterling is committed to maintaining strong asset quality, as we recognize it is a key driver of financial performance."

42.     On August 9, 2005, Sterling filed a Form 10-Q with the SEC, in which it repeated the information in the company's July 26, 2005 press release.

43.     On September 15, 2005, the date of the first "earn out" payment, Sterling issued 22,866 shares of common stock to Plaintiff at a price of $20.69 per share.

44.     On October 25, 2005, Sterling issued a materially false and misleading press release announcing its results for the third quarter of fiscal year 2005. The press release provided in pertinent part:

> LANCASTER, Pa., Oct. 25 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) reported record earnings for the quarter and nine months ended Sept. 30, 2005.
>
> "We are pleased with another quarter of record earnings and achieving our desired growth goals," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our growth in existing and new

markets has led to solid performances in both our Banking Services Group and Financial Services Group affiliates."

\*\*\*\*

Sterling's net income was $10.086 million for the quarter ended Sept. 30, 2005, an increase of $1.586 million, or 18.7 percent from the third quarter of 2004. Diluted earnings per share totaled $0.344 for the third quarter of 2005 versus $0.307 for the same period in 2004, an increase of 12.1 percent. Return on average realized equity for the third quarter of 2005 was 14.07 percent, compared to 15.01 percent in 2004.

\*\*\*\*

"Despite some recent compression, a trend that the industry has been experiencing for the past several quarters, our net interest margin continues to exceed our peer group," Moyer added. "Given Sterling's diversified product offering, pressure in our net interest margin should be lessened by growth in the earnings contributions of our financial services affiliates."

Sterling's net income was $29.049 million for the nine months ended Sept. 30, 2005, an increase of $4.704 million, or 19.3 percent from the same period in 2004. Diluted earnings per share totaled $0.991 for the nine months ended Sept. 30, 2005, versus $0.887 for 2004, an increase of 11.7 percent. Return on average realized equity for the first three quarters of 2005 was 13.97 percent, compared to 15.07 percent in 2004. The decrease in return on average realized equity, despite an increase in earnings, is due to an increase in stockholders' equity that resulted from the issuance of stock to acquire Corporate Healthcare Strategies (d/b/a StoudtAdvisors) and Pennsylvania State Bank in 2004.

\*\*\*\*

Sterling's financial services affiliates' non-interest income increased $5.789 million, or 18.1 percent. The acquisition of Corporate Healthcare Strategies in June 2004 attributed to $2.643 million of the increase. The remaining increase

experienced resulted from organic growth and approximately $820,000 in gains on sales of loans and finance receivables, which totaled $955,000 for the nine months ended Sept. 30, 2005 compared to $135,000 in 2004. The sale of these assets allows for the funds to be reinvested in new asset growth and to limit Sterling's credit concentration within one industry, and is expected to be a funding source for Sterling in the future.

45. On November 9, 2005, Sterling filed a Form 10-Q with the SEC, in which it repeated the information in the company's October 25, 2005 press release.

46. On January 24, 2006, Sterling issued a materially false and misleading press release announcing its fourth quarter results for fiscal year 2005. The press release stated, in relevant part:

LANCASTER, Pa., Jan. 24 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) reported record earnings for the quarter and year ended December 31, 2005.

"Our record performance during 2005 is the result of our focus on growth in existing markets, broadening our product mix and entering new markets," said J. Roger Moyer, Jr., president and chief executive officer, Sterling Financial Corporation. "We are especially pleased with loan and deposit growth, an increase in net interest income and our strong credit quality."

****

Sterling's net income was $39.3 million for the year ended December 31, 2005, an increase of $5.9 million, or 17.8 percent from the same period in 2004. Diluted earnings per share totaled $1.34 for the year ended December 31, 2005, versus $1.21 for 2004, an increase of 10.7 percent. Return on average realized equity was 13.97 percent, compared to 15.00 percent in 2004. The decrease in return on average realized equity, in spite of an increase in earnings, is due to an increase in stockholders' equity that resulted from the issuance of stock to acquire Corporate Healthcare Strategies (d/b/a StoudtAdvisors) and Pennsylvania State Bank in 2004 and the related

19

impact of purchase accounting. Return on tangible equity was 20.61 percent in 2005, compared to 18.21 percent in 2004.

\*\*\*\*

Sterling's financial services segments non-interest income increased $6.2 million, or 14.2 percent. The acquisition of Corporate Healthcare Strategies in June 2004 contributed $2.4 million to the increase. The remaining increase was primarily due to higher rental income on operating leases of $2.5 million and an increase of approximately $1.2 million in gains on sale of finance receivables.

\*\*\*\*

The allowance for loan losses of $21.0 million represented 1.00 percent of total loans at December 31, 2005, compared to $18.9 million, or 0.99 percent at December 31, 2004. Non-performing loans as a percent of total loans decreased 2 basis points from 0.24 percent at December 31, 2004, to 0.22 percent at December 31, 2005. This decrease was attributable to strong credit quality, lower delinquency trends and strong loan growth during 2005.

47.    On March 15, 2006, Sterling filed a Form 10-K with the SEC, in which it repeated the information in the company's January 24, 2006 press release.

48.    On April 25, 2006, Sterling issued a materially false and misleading press release announcing its first quarter 2006 results. The press release provided:

LANCASTER, Pa., April 25 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) reported strong earnings for the first quarter ended March 31, 2006.

"Building on the progress that we achieved during 2005 and previous years, we are pleased to begin 2006 with a strong first quarter - one highlighted by continued growth in revenues, and the alignment of our Financial Services Group with our Banking Services Group," said J. Roger Moyer, Jr., president and chief executive officer, Sterling

Financial Corporation. "Our strength is attributable to our consistency in performance and deliberate execution of a strategy that focuses on the successes of our customers, our shareholders and our employees."

****

Sterling's net income was $10.2 million for the quarter ended March 31, 2006, an increase of $0.9 million or 9.5 percent from the first quarter of 2005. Diluted earnings per share totaled $0.35 for the first quarter of 2006 versus $0.32 for the same period last year, an increase of 9.4 percent. Return on assets for the first quarter of 2006 was 1.41 percent, compared to 1.38 percent in 2005. For the first quarter of 2006, return on realized equity and return on tangible equity were 13.88 percent and 20.26 percent, respectively, compared to 13.82 percent and 20.30 percent, respectively, in 2005.

49.     On May 10, 2006, Sterling filed a Form 10-Q with the SEC, in which it repeated the information in the company's April 25, 2006 press release.

50.     On June 15, 2006, the date of the second "earn out" payment, Sterling issued 17,992 shares of common stock to Plaintiff at a price of $21.75 per share.

51.     On July 25, 2006, Sterling issued a materially false and misleading press release announcing its second quarter results for fiscal year 2006. The press release provided in pertinent part:

LANCASTER, Pa., July 25 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) reported record earnings for the quarter and six months ended June 30, 2006.

"We delivered another quarter of solid performance," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "While we have experienced some modest compression in our net interest

margin, our company is well positioned to meet a challenging interest rate environment as we continue to focus on revenue growth by delivering a broad portfolio of complementary financial services through our banks and financial services group companies."

\*\*\*\*

Sterling's net income was $10.3 million for the quarter ended June 30, 2006, an increase of $597,000, or 6.2 percent from the second quarter of 2005. Diluted earnings per share totaled $0.35 for the second quarter of 2006 versus $0.33 for the same period in 2005, an increase of 6.1 percent. Return on assets for the second quarter of 2006 was 1.37 percent as compared to 1.39 percent for the same period last year, while return on average realized equity and return on average tangible equity were 13.71 percent and 20.55 percent, respectively for the second quarter of 2006 as compared to 14.00 percent and 21.10 percent, respectively for the same period last year.

Total revenue, comprised of net interest income and non-interest income excluding net gains on sale of securities, totaled $48.5 million for the second quarter of 2006, an increase of $3.1 million or 6.9 percent from the same period last year. Meanwhile, non-interest expense totaling $32.8 million for the second quarter of 2006 increased $2.0 million or 6.6 percent from the second quarter of 2005. As a result, the efficiency ratio improved from 60.86 percent for the three months ended June 30, 2005, to 60.45 percent for the second quarter of 2006.

Sterling has continued its trend of increasing net interest income, from $28.3 million for the second quarter of 2005 to $30.4 million in 2006, a 7.4 percent increase. The growth in net interest income has resulted primarily from the continued organic growth in loans and deposits, particularly higher yielding loans, including commercial loans and finance receivables. The net interest margin was 4.77 percent for the second quarter of 2006 as compared to 4.83 percent for the three months ended March 31, 2006, and 4.81 percent for the quarter ended June 30, 2005. While Sterling has been successful in

managing its net interest margin by attracting new households and growing its loans and deposits, it has also experienced pressure in its net interest margin primarily resulting from the relatively flat yield curve, when compared to historical levels, and increased pricing competition on loans and deposits.

****

Sterling's net income was $20.4 million for the six months ended June 30, 2006, an increase of $1.5 million, or 7.8 percent from the same period in 2005. Diluted earnings per share totaled $0.70 for the six months ended June 30, 2006, versus $0.65 for 2005, an increase of 7.7 percent. Return on assets, return on average realized equity and return on average tangible equity were 1.39 percent, 13.79 percent, and 20.40 percent, respectively, for the six months ended June 30, 2006, as compared to 1.39 percent, 13.92 percent and 20.59 percent, respectively, for the same period last year.

Total revenue of $95.9 million for the first six months of 2006 increased $7.3 million or 8.3 percent from the same period last year and exceeded growth in expenses of $4.2 million or 6.8 percent, for the same comparison period. This resulted in an improvement in Sterling's efficiency ratio from 61.67 percent for the first six months of 2005 to 60.64 percent for the first six months of 2006.

Sterling's net interest income improved from $55.9 million for the six months ended June 30, 2005 to $60.1 million in 2006, a 7.6 percent increase. This increase was driven primarily by growth in loans and deposits, partially offset by a decrease of three basis points in the net interest margin to 4.80 percent as a result of the interest rate environment and pricing competition during the first six months of 2006.

****

Credit quality remained strong in the second quarter of 2006. The allowance for loan losses of $22.4 million represented 1.00 percent of total loans at June 30, 2006, compared to $19.1 million, or 0.95 percent at June 30,

2005 and $21.0 million, or 1.00 percent at December 31, 2005. Nonperforming loans to total loans were 0.22 percent at June 30, 2006, versus 0.19 percent at June 30, 2005, and 0.22 percent at December 31, 2005.

52.     On August 8, 2006, Sterling filed a Form 10-Q with the SEC, in which it repeated the information in the company's July 25, 2006 press release.

53.     On October 24, 2006, Sterling issued a materially false and misleading press release announcing its results for the third quarter of the 2006 fiscal year. The press release provided in pertinent part:

> LANCASTER, Pa., Oct. 24 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) reported earnings for the quarter and nine months ended September 30, 2006.
>
> Results of Operations
>
> Quarter Ended September 30, 2006
>
> Sterling's net income for the third quarter ended September 30, 2006, was $5.6 million or $0.19 per diluted share, compared to $10.1 million or $0.34 per diluted share for the same period last year. Included in Sterling's third quarter 2006 net income was a non-cash impairment charge totaling $5.2 million ($8.0 million pre-tax) or $0.18 per diluted share. The impairment charge was related to Sterling's affiliate, Corporate Healthcare Strategies, LLC's (CHS), goodwill and intangible assets and reflects management's current estimate of the expected impairment (see non-interest expense section for a more detailed explanation). Historically, this affiliate has not been a material contributor to Sterling's earnings or earnings per share. Excluding this charge, Sterling's third quarter 2006 net income would have been $10.8 million, an increase of 6.8 percent from the same period last year, while diluted earnings per share would have been $0.37, an increase of 8.8 percent from the same quarter in the prior year.
>
> ****

"While we did absorb a non-cash impairment charge which had a negative impact on earnings, our company's fundamentals remain strong," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our customer acquisition strategy continued to strengthen as we saw growth in both our loans and deposits. Referrals among our diverse lines of business also are helping us drive revenue."

****

Sterling's net income was $26.0 million for the nine months ended September 30, 2006, or $0.89 per diluted share, compared to $29.0 million or $0.99 per diluted share for the same period last year. Excluding the impact of the impairment charge, net income would have been $31.2 million, an increase of 7.4 percent from the same period last year, while diluted earnings per share would have been $1.07 for the nine months ended September 30, 2006, an increase of 8.1 percent from the same period last year. Return on assets, return on average realized equity and return on average tangible equity were 1.16 percent, 11.52 percent, and 17.25 percent, respectively, for the nine months ended September 30, 2006. Excluding the impact of the impairment charge, return on assets, return on average realized equity and return on average tangible equity would have been 1.39 percent, 13.82 percent, and 20.55 percent, respectively, as compared to 1.39 percent, 13.97 percent and 20.63 percent, respectively, for the same period last year.

****

Credit quality remained strong in the third quarter of 2006. Non-performing loans to total loans were 0.19 percent at September 30, 2006, versus 0.17 percent at September 30, 2005, and 0.22 percent at December 31, 2005. The allowance for loan losses of $22.8 million represented 1.00 percent of total loans at September 30, 2006, compared to $20.2 million, or 0.96 percent at September 30, 2005 and $21.0 million, or 1.00 percent at December 31, 2005.

54.    On November 8, 2006, Sterling filed a Form 10-Q with the SEC, in which it repeated the information in the company's October 24, 2006 press release.

55.    On January 23, 2007, Sterling issued a materially false and misleading press release announcing its results for the fourth quarter of fiscal 2006. The press release provided in pertinent part:

> LANCASTER, Pa., Jan. 23 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI) reported earnings for the quarter and year ended December 31, 2006.
>
> "2006 was a challenging year for our company and for the financial services industry," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "I am pleased that we continued to advance our core customer strategies and, as a result, were able to turn in a solid financial performance, considering the interest rate environment and competitive pressures in our markets."
>
> ****
>
> Sterling's net income for the quarter ended December 31, 2006 was $10.4 million or $0.35 per diluted share, compared to $10.2 million or $0.35 per diluted share for the same period last year. Fourth quarter 2006 and 2005 net income included the impact of discontinued operations totaling net after-tax losses of $215,000 or $0.01 per diluted share, and $13,000 or $0.00 per diluted share, respectively. On December 31, 2006 Sterling divested three related lines of business associated with its insurance segment, Corporate Healthcare Strategies, LLC ("CHS"), Professional Services Group and certain insurance assets of its property and casualty insurance agency, Lancaster Insurance Group, LLC. All prior period results included herein have been reclassified to conform to the current presentation which displays the operating results of the divested businesses as discontinued operations. These reclassifications had no effect on net income or stockholders' equity. Unless

otherwise noted, the remaining discussion and tabular data relate only to Sterling's continuing operations.

Sterling's net income from continuing operations for the quarter ended December 31, 2006 was $10.7 million, an increase of $427,000, or 4.2 percent from the fourth quarter of 2005. Diluted earnings per share totaled $0.36 for the fourth quarter of 2006 versus $0.35 for the same period in 2005, an increase of 2.9 percent. Return on average assets and return on average realized equity were 1.32 percent and 13.27 percent, respectively, for the fourth quarter of 2006, compared to 1.40 percent and 13.98 percent, respectively, for the same period last year. Return on average tangible equity was 18.93 percent for the quarter ended December 31, 2006, compared to 20.22 percent for the same period last year.

****

Sterling's net income for 2006 was $36.5 million or $1.24 per diluted share, compared to $39.3 million or $1.34 per diluted share for 2005. Included in Sterling's 2006 and 2005 net income was discontinued operations totaling a net after-tax loss of $5.1 million or $0.17 per diluted share, and net income of $210,000 or $0.01 per diluted share, respectively.

Sterling's net income from continuing operations was $41.6 million for the year ended December 31, 2006, an increase of $2.5 million, or 6.5 percent as compared to year ended December 31, 2005. Diluted earnings per share totaled $1.41 for 2006 versus $1.33 for 2005 an increase of 6.0 percent. Return on average assets, return on average realized equity and return on average tangible equity were 1.36 percent, 13.59 percent, and 19.76 percent, respectively, for 2006, as compared to 1.38 percent, 13.89 percent and 20.13 percent, respectively, for the prior year.

56. On March 16, 2007, the company filed its annual report for 2006 on Form 10-K with the SEC, reiterating the information in the above press release.

57. On April 19, 2007, however, Sterling issued a press release saying that it was postponing the release of its earnings figures for the quarter ended March 31, 2007, which were originally scheduled to be released on April 24. This press release disclosed, for the first time, that the company was investigating "irregularities" at EFI:

> Sterling's management has received information suggesting irregularities related to certain financing contracts in one of its financial services group companies, Equipment Finance LLC (EFI). EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States.

58. Upon the news of this internal investigation, shares of SLFI closed at $21.64 on April 19, down from its closing price of $21.97 on April 18.

59. On April 30, 2007, before the markets opened, Sterling issued another press release that, for the first time, disclosed that the company expected to restate its financial statements from as far back as 2004 as a result of the massive internal "irregularities" at EFI:

> Based on preliminary information from the investigation and management's own review, Sterling's Board of Directors concluded on April 29, 2007, that the Corporation's previously issued financial statements, the reports on the audited financial statements and related internal controls issued by its independent registered public accounting firm, and all earnings releases issued for 2004 through 2006, should no longer be relied upon due to the expected material impact of these irregularities. Sterling expects to restate or amend these financial statements once the extent of the impact is known, which may require the Corporation and its affiliates to raise additional capital. The impact of the irregularities may also be material for years prior to 2004, depending on the results of the ongoing investigation.

60. The April 30 press release further said that the company was postponing its 2007 annual shareholder meeting, which was originally scheduled for May 8.

61. The company also announced in this press release that it did "not expect that it will be able to file its Form 10-Q by the due date of May 10."

62. Sterling also disclosed that two senior executives at EFI had been placed on leave as a result of the company's investigation.

63. Upon this news, Sterling's stock price plunged, wiping out millions of dollars in market capital. On Friday, April 27, SLFI closed at $20.72, and on April 30, the day of this press release, the stock closed at $16.65, down nearly twenty percent (20%) from its closing price on April 27. By May 1, Sterling's stock had sunk to only $14.65 per share.

64. On May 24, 2007, Sterling issued a press release in which it announced that the irregularities in certain financing contracts at EFI were "a direct result of collusion by a group of EFI employees." In sharp contrast to the company's disclosures from the prior month which described the internal conduct at EFI as mere "irregularities," the May 24 press release disclosed for the first time the true extent of the long-standing deliberate and fraudulent conduct that was occurring within the company. Specifically, the press release provided that:

> Sterling's investigation to date has revealed evidence of a sophisticated loan scheme, orchestrated deliberately by certain EFI officers and employees over an extended period of time, to conceal credit delinquencies, falsify financing contracts and related documents, and subvert Sterling's established internal controls and reporting

systems. The scheme was able to avoid detection until recently due to the depth and breadth of the collusion. In other words, employees at different seniority levels and functional areas were apparently involved.

65.     In the May 24 press release, J. Roger Moyer, Jr., the president and chief executive officer of Sterling, acknowledged that shareholders had been adversely impacted by the longstanding collusion at Sterling:

> "Our investigation has now revealed evidence that Sterling and its shareholders were subjected to a significant, sophisticated loan scheme, specifically designed to deceive and avoid detection," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our priority now is to address the problem and continue serving our customers. Decisive actions have been taken to reinforce oversight and centralize operational management at EFI."

66.     The May 24 press release further revealed that Sterling's Board of Directors had concluded on May 23 that Sterling would be required to record a "material impairment" of certain assets of EFL. The press release said that these assets included:

> EFI financing contracts, interest associated with those contracts, and potentially goodwill attributable to EFI. While Sterling has not determined the annual periods in which the impairment occurred, Sterling currently expects to record a cumulative after-tax charge to the December 31, 2006 financial statements of approximately $145 million to $165 million, based upon the results of the investigation's preliminary findings. However, at this point in the investigation, Sterling has not determined the final financial impact, including any potential recoveries, such as insurance and collateral.

67.     The company also disclosed in the May 24 press release that it would temporarily stop paying dividends, and would consolidate four bank subsidiaries to

30

shore up its devastated capital base:

> The capital restoration plan includes consolidating four of
> Sterling's affiliate banks in order to maximize capital.
> Effective at 12:01am on May 25, 2007, and based on
> approval of the Office of the Comptroller of the Currency,
> Bank of Hanover and Trust Company, Pennsylvania State
> Bank, Bay First Bank, N.A., and Bank of Lancaster, N.A.,
> will all become divisions of BLC Bank, N.A. All branches
> will continue to operate under their current names, with
> the same personnel and the same types of products and
> services that our customers know and rely on. The plan
> also includes halting the payment of dividends to Sterling
> Financial Corporation shareholders for a period of time,
> and exploring all strategic options, including raising
> additional capital, the sale of certain assets and/or
> business units, and entering into a business combination
> with a strategic partner. Keefe, Bruyette & Woods has
> been retained to assist Sterling in exploring these options.

68. The May 24 press release noted that as a result of the internal investigation at Sterling, the company had terminated five EFI employees. While Sterling did not reveal the identities of the fired employees, the press release said that the Chief Operating Officer and Executive Vice President of EFI were among those who had been terminated.

69. Sterling's stock closed at $16.16 per share on May 24, and on May 25, it fell another $6.19 (or 38.3%), closing at $9.97 per share. There were 3,295,000 shares of SLFI traded on May 25, a figure that is in sharp contrast to the 170,384 average daily volume of SLFI shares traded over the preceding three (3) months. The $9.97 per share price at which SLFI closed on May 25 represents a decrease of $20.42 per share from the highest price at which SLFI traded during the Class Period ($30.39) – a decrease of nearly two-thirds (2/3) of the value of the stock.

70. On a conference call with investors on May 24, company officials said that they were "working with appropriate federal law-enforcement authorities," and that financial results beyond those from 2004 to 2006 may be affected.

## CLASS ACTION ALLEGATIONS

71. Plaintiff brings this suit as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a Class consisting of all persons who purchased or otherwise acquired Sterling common stock between April 27, 2004 and May 24, 2007, inclusive (the "class period"), and who were damaged thereby. Excluded from the class are Defendants, members of the immediate family of each Defendant, any subsidiary or affiliate of Sterling.

72. This action has been brought and may be properly maintained as a class action for the following reasons:

a. Numerosity: Members of the class are so numerous that their individual joinder is impracticable. Indeed, the proposed class contains thousands and perhaps tens of thousands of members. Throughout the class period, Sterling common stock was actively traded on the NASDAQ (an open and efficient exchange) under the symbol SLFI. According to the Form 10-K filed by Sterling with the SEC for the fiscal year ended December 31, 2006, there were 70.0 million shares of SLFI common stock authorized at December 31, 2006, and approximately 29.7 million shares outstanding. As of December 31, 2006, Sterling had approximately 4,869 shareholders of record. In addition, there were 10.0 million shares of preferred stock authorized at December 31, 2006, with no shares issued. The class is therefore

sufficiently numerous to make joinder impracticable, if not impossible. The precise number of class members is unknown to Plaintiff. However, record owners and other members of the class may be identified from records maintained by Sterling and/or its transfer agents, and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

b.      Existence and Predominance of Commons Questions of Fact and Law: Common questions of law and fact exist as to all members of the class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

i.      whether the federal securities laws were violated by the acts and omissions of the Defendants;

ii.      whether Defendants participated in and pursued the common course of conduct complained of herein;

iii..      whether documents, press releases, and other statements disseminated to the investing public and the company's shareholders during the class period misrepresented material facts about the business, finances, financial condition, and prospects of Sterling;

iv.      whether the Controlling Defendants are "controlling persons" within the meaning of the federal securities laws;

v.      whether the market price of Sterling common stock during the class period was artificially inflated due to the material

misrepresentations and failures to correct the material misrepresentations complained of herein; and

      vi.    the extent to which the members of the class have sustained damages, and the proper measure of damages.

These and other questions of law or fact which are common to the members of the class predominate over any questions affecting only individual members of the class.

    c.    Typicality: Plaintiff's claims are typical of the claims of the class since Plaintiff purchased Sterling common stock, as did each member of the class. Furthermore, Plaintiff and all members of the class sustained monetary injury arising out of Defendants' wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent class members.

    d.    Adequacy: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class that he seeks to represent and he has retained counsel competent and highly experienced in securities and complex class action litigation, and they intend to prosecute this action vigorously. The interests of the class will be fairly and adequately protected by Plaintiff and his counsel.

    e.    Superiority: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and members of the class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive

litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the class individually to redress effectively the wrongs done to them. Even if the members of the class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

   f. Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole; and

   g. In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

APPLICABILITY OF PRESUMPTION OF RELIANCE:
FRAUD-ON-THE-MARKET DOCTRINE

73. At all relevant times, the market for Sterling common stock was an efficient market for the following reasons, among others:

   a. Sterling common stock was listed and actively traded on NASDAQ, a highly efficient market;

   b. As a regulated issuer, the company filed periodic public reports with the SEC;

c. Sterling stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm. These reports were publicly available and entered the public market place; and

d. Sterling regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

74. As a result, the market for Sterling securities promptly digested current information with respect to the company from all publicly-available sources and reflected such information in the company's stock price. Under these circumstances, all purchasers of Sterling common stock during the class period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

75. The statutory safe harbor for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. To the extent that the specific statements pleaded herein were identified as forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because when each of those forward-looking statements was made the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or

approved by an executive officer of the one of the defendant companies who knew that those statements were false when made.

SCIENTER ALLEGATIONS

76. Defendants acted with scienter in that they: knew or recklessly disregarded that the public documents and statements issued or disseminated by or in the name of the company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth above in detail, Defendants, by virtue of their receipt of information reflecting the truth about the company and its business practices, their control over and/or receipt of the company's allegedly materially misleading misstatements and/or their associations with the company which made them privy to confidential proprietary information concerning Sterling, were active and culpable participants in the fraudulent scheme. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. This case does not involve allegations of false forward-looking statements or projections, but instead involves false statements about the company's business, finances and operations. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of personnel at the highest level of the companies, including Defendants.

37

77.     Defendants engaged in such a scheme to inflate the price of Sterling

common stock in order to: (a) protect and enhance their executive positions and the

substantial compensation and prestige they obtained thereby; (b) enhance the value

of their personal holdings of Sterling common stock and options; and, (c) to use the

company's stock as currency for further corporate acquisitions.

## VIOLATIONS ALLEGED

### COUNT I

#### Violations of Section 10(b) of the Exchange Act
#### and Rule 10b-5

78.     All preceding paragraphs are incorporated by reference.

79.     Each of the Defendants: (a) knew or recklessly disregarded material

adverse non-public information about the company's financial results and then

existing business conditions, which was not disclosed; and (b) knowingly or

recklessly participated in drafting, reviewing and/or approving the misleading

statements, releases, reports, and other public representations of and about

Sterling.

80.     During the class period, Defendants, with knowledge of or reckless

disregard for the truth, disseminated or approved the false statements specified

above, which were misleading in that they contained misrepresentations and failed

to disclose material facts necessary in order to make the statements made, in light

of the circumstances under which they were made, not misleading.

81.     Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 in

that they have: (a) employed devices, schemes and artifices to defraud; (b) made

untrue statements of material facts or omitted to state material facts necessary in

order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Sterling stock during the class period.

82.     Plaintiff and the class have suffered damage in that, in reliance on the integrity of the market, he paid artificially inflated prices for Sterling stock. Plaintiff and the class would not have purchased Sterling stock as he did, by selling his interest in CHS to Sterling for consideration that included Sterling stock, at the values that Sterling stock was given, or at all, if they had been aware that the market prices of Sterling's stock had been artificially and falsely inflated by Defendants' false and misleading statements.

COUNT II

Violation of Section 20(a) of the Exchange Act Against<br>the Controlling Defendants

83.     All preceding paragraphs are incorporated by reference.

84.     The Controlling Defendants acted as controlling persons of the company within the meaning of §20(a) of the Exchange Act. By reason of their senior executive positions, they had the power and authority to cause the companies to engage in the wrongful conduct complained of herein.

85.     As a direct and proximate result of such wrongful conduct, Plaintiff and the class suffered damages in connection with their purchases of Sterling stock, and the Controlling Defendants are liable to Plaintiff and the class pursuant to §20(a) of the Exchange Act.

39

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays, on behalf of himself and members of the class, that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and issue order certifying the Class as defined above;

B.     award all damages to which Plaintiff and class members are entitled under the Exchange Act;

C.     award pre-judgment and post-judgment interest on such monetary relief;

D.     award reasonable attorney's fees and costs; and

E.     grant such further and other relief that this Court deems appropriate.

DATED: July 13, 2007

Respectfully submitted,

Joseph F. Roda
Eric L. Keepers
RODANAST, PC
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000
(717) 892-1200 facsimile